**GROSS–GIVEN MFG. CO. v. KELM, Collector of Internal Revenue.**

**Civ. A. No. 3198.**

United States District Court
D. Minnesota, Fourth Division.

July 7, 1951.

146

Robert A. Levitt, Minneapolis, Minn., for plaintiff Gross-Given Mfg. Co.

The following appear as attorneys for the defendant Elmer F. Kelm:

Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe and Maurice P. Wolk, Sp. Assts. to the Atty. Gen., C. U. Landrum, U. S. Atty., and Wm. P. Murphy, Asst. U. S. Atty., District of Minnesota, St. Paul, Minn., for defendant Kelm.

JOYCE, District Judge.

The facts in the above matter are before this court upon a stipulation agreed to between the parties. The questions raised are two. First, did the Treasury Department err in limiting plaintiff, who for the purposes of computing excess profits taxes claimed deduction for contribution to a trust created under a profit-sharing plan, to the amount called for by the formula of the plan? Second, should the contribution to the trust be determined from the figures originally reported by the plaintiff in its tax returns, or upon the figures, as adjusted by the Commissioner of Internal Revenue, after auditing the tax return?

The plaintiff-taxpayer is · a Minnesota corporation engaged in the manufacture of metal products with offices located in· St. Paul, Minnesota. It keeps its books and it files its tax returns on a calendar year accrual basis of accounting. On or about December 2, 1943, the company entered into a profit-sharing trust agreement for the benefit of its employees, admitted to be fifty in number at that time, of which number only seventeen or eighteen came within the purview of the trust. The trust agreement, as subsequently amended, is a part of the stipulation. Effective January 1, 1944, the trust established under the profit-sharing agreement was recognized and approved by the Pension Trust Division of the Treasury Department as exempt from income tax under the provisions of Section 165(a) of the Internal Revenue Code, 26 U.S.C.A. § 165(a).

Among other things the pension trust agreement contained the following provisions:

"Until such time as the company has notified the Trustees of its determination to discontinue further contributions to the Plan, contributions shall be made in each year in which there are Net Profits, said 'Net Profits' to be the net profits reduced by an amount equal to seven and one-half (7½%) per cent of the invested capital of the Company ('Invested capital' is construed to be invested capital as determined by the Internal Revenue Code for Excess Profits purposes for the tax year 1943), but before State or Federal income taxes

and before deduction for Profit-Sharing Trust plan; such contribution in each year shall be Fifteen (15%) per cent of Net Profits, as above defined, but not in excess of Fifteen (15%) per cent of the basic salary or wages of all eligible participants."

There is some discrepancy between the stipulation of facts and the briefs of counsel as to the amount paid by the plaintiff into the profit-sharing trust, but this is not important for the reason that counsel have agreed that the figures adopted by them are subject to re-computation in the event plaintiff is successful in either cause of action. At any rate, we shall adopt $9,100.88 as the amount paid by the company into the profit-sharing trust on January 30, 1945, this amount representing 15 per cent of the basic compensation paid to eligible employees and admittedly in excess of 15 per cent of the net profits, the formula called for under the plan.

On audit of plaintiff's tax returns the Commissioner of Internal Revenue reduced the $9,100.88 deduction to $5,209.35, this amount being 15 per cent of plaintiff's net profits for the year 1944. As a result of this adjustment, and certain others not here in question, additional taxes and interest were duly assessed against plaintiff who paid them and filed an appropriate refund claim wherein it challenged the propriety of the Commissioner's action in reducing the deduction for the contribution to the profit-sharing trust. The propriety of the Commissioner's action forms the basis of the plaintiff's primary cause of action.

Based upon the net income of $28,591.21 originally reported by plaintiff in its 1944 tax returns, 15 per cent of the company's net profits for that year was $5,209.35, which was the amount allowed by the Commissioner as a deduction. Based upon the company's net income, as increased by the undisputed adjustments made by the Commissioner, 15 per cent of the net profits would be $6,046.07. The contention that the contribution to the profit-sharing trust should be computed on the basis of the net income as finally adjusted, rather than the net income originally reported,

forms the basis of plaintiff's alternative cause of action.

Plaintiff's position in its primary cause of action is that the only limitation as to the amount of deduction is 15 per cent of the compensation, as evidenced by section 23(p) of the Code. 26 U.S.C.A. § 23(p). It argues that the provision in its plan calling for a contribution to the trust in an amount equal to 15 per cent of the net profits was a limitation inserted for its own benefit and which it could waive if it so chose to do. Section 23(p) of the Code reads as follows:

"(p) Contributions of an employer to an employees' trust or annuity plan and compensation under a deferred-payment plan.

"(1) General rule. If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under subsection (a) but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent: * * *.

\* \* \* \* \* \*

"(C) In the taxable year when paid, if the contributions are paid into a stock bonus or profit-sharing trust, and if such taxable year ends within or with a taxable year of the trust with respect to which the trust is exempt under section 165(a), *in an amount not in excess of 15 per centum of the compensation otherwise paid or accrued during the taxable year to all employees under the stock bonus or profit-sharing plan.* If in any taxable year beginning after December 31, 1941, there is paid into the trust, or a similar trust then in effect, amounts less than the amounts deductible under the preceding sentence, the excess, or if no amount is paid, the amounts deductible, shall be carried forward and be deductible when paid in the succeeding taxable years in order of time, but the amount so deductible under this sentence in any such succeeding taxable year shall not exceed 15 per centum of

the compensation otherwise paid or accrued during such succeeding taxable year to the beneficiaries under the plan. In addition, any amount paid into the trust in a taxable year beginning after December 31, 1941, in excess of the amount allowable with respect to such year under the preceding provisions of this subparagraph shall be deductible in the succeeding taxable years in order of time, but the amount so deductible under this sentence in any one such succeeding taxable year together with the amount allowable under the first sentence of this subparagraph shall not exceed 15 per centum of the compensation otherwise paid or accrued during such taxable year to the beneficiaries under the plan. The term 'stock bonus or profit-sharing trust', as used in this subparagraph, shall not include any trust designed to provide benefits upon retirement and covering a period of years, if under the plan the amounts to be contributed by the employer can be determined actuarily as provided in subparagraph (A). If the contributions are made to two or more stock bonus or profit-sharing trusts, such trusts shall be considered a single trust for the purposes of applying the limitations in this subparagraph." (Italics supplied.)

Defendant justifies its disallowance of the contribution in excess of that called for by the formula of the plan on three different grounds: (1) To qualify for exemption under Section 165(a) a trust must be created under a plan which establishes a definite program for making contributions to the trust. If there must be a definite plan of contribution, then that plan must be observed and taxpayer cannot disregard this plan and make contributions under a wholly different plan not approved by the Commissioner. 26 U.S.C.A. § 165. (2) As a condition to securing a deduction for contributions for a profit-sharing plan, the taxpayer must first establish that the contribution is an ordinary and necessary business expense within the meaning of Section 23(a). 26 U.S.C.A. § 23(a). To the extent that the contribution exceeded 15 per cent of net profits it was not, in the absence of proof, an ordinary and necessary business expense. (3) Since the con-

tribution was not paid to the trust in 1944, it could be claimed as a deduction in 1944 only if it accrued during that year. And since during 1944 nothing occurred which created a liability on taxpayer's part to pay more than 15 per cent of net profits, no liability to pay a larger amount accrued and no deduction can be claimed under Section 23(p)(1) for an amount greater than 15 per cent of the net profits.

The issue in the primary cause was decided adversely to the taxpayer in Wooster Rubber Co. v. Commissioner, 14 T.C. 1192 (June 20, 1950), now on appeal to the Court of Appeals, Sixth Circuit, wherein the court adopted the first argument of the defendant to the effect that only such payments as were actually called for by the predetermined formula contained in the trust plan are deductible under Section 23 (p)(1)(C). It is not necessary to pass upon the merits of the decision in the Wooster case for this court is of the opinion that the action of the Commissioner must be sustained upon the second ground urged, and incidentally, one that was not urged by the Commissioner in the Wooster case.

A profit-sharing trust must qualify for exemption under Section 165, but no deductions for contributions thereto are permitted except under Section 23(p) of the Code. Before adoption of the Revenue Act of 1942, payments made to employees' profit-sharing funds could be deducted either under the specific provisions for such deductions of Section 23(p) or as "ordinary and necessary" business expenses under Section 23(a):

"§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:

"(a) Expenses

"(1) Trade or business expenses.

"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *."

In the Revenue Act of 1942 Congress forbade any such deductions except in ac-

cord with Section 23(p) of the Code as amended by that Act. Plaintiff argues that the maximum limitation of 15 per cent of the compensation provided for in Section 23(P)(1)(C) also constitutes a legislative determination that contributions up to that amount are ordinary and necessary business expenses. The argument advanced in favor of this position is forceful and persuasive but an examination of the statute itself, the legislative history and the applicable regulations of the Treasury Department satisfies that this was not the intent of Congress.

The provisions of Section 23(p)(1), hereinbefore quoted, clearly require that contributions to be deductible must also be ordinary and necessary expenses which would be deductible under Section 23(a) of the Code. The applicable regulations adopted by the Treasury Department subsequent to the passage of the Revenue Act of 1942 are equally explicit:

"29.23(p)–1. Contributions of an employer to an employees' trust or annuity plan and compensation under a deferred payment plan; in general.

* * * * * *

"A contribution to be deductible under section 23(p) must be an ordinary and necessary expense which would be deductible under section 23(a) if it were not for the fact that the statute specifically provides that it shall be deductible under section 23(p)." (26 C.F.R. 29.23(p)–1).

The above section was subsequently amended to read as follows: "In order to be deductible under section 23(p), contributions must be expenses which would be deductible under section 23(a) if it were not for the provision in section 23(p)(1) that they are deductible, if at all, only under section 23(p). Contributions may therefore be deducted under section 23(p) only to the extent that they are ordinary and necessary expenses during the taxable year in carrying on trade or business and are compensation for personal services actually rendered." (T.D. 5666, 1948–2 Cum.Bull. 34; 26 C.F.R. 23(p)–1).

That the above regulation is a fair and reasonable interpretation of the code ap-

pears from the legislative history in Senate Report No. 1631 of the 77th Congress, Second Session, which reads as follows:

"Section 164. Pension Trusts.

"This section corresponds to section 144 of the House Bill (H.R. 7378) and amends section 165 of the Code, relating to taxation of employees' trusts, section 23(p), relating to deductions for an employer's contributions to a pension trust, and section 22(b) relating to taxation of annuities.

* * * * * *

"Amendments to Section 23(p).

"The House Bill is revised to refer to employers' payments to or under stock bonus, pension, profit-sharing or annuity plans as contributions instead of as compensation. Reference to them as contributions is in accord with general usage and the provisions of Section 165. This change in language is not intended to modify the provision in section 23(p) that a contribution to be deductible under section 23(p) must meet the requirements of section 23(a)."

See also 4 Mertens Law of Federal Income Taxation, Sec. 25.69.

The maximum deduction limitation of 15 per cent of the compensation and the provision relating to the right to carry forward to succeeding years any unpaid portion of 15 per cent of the basic compensation provided for in section 23(p)(1)(C), come into effect only when the prior conditions are satisfied. Doubtless it was the intention of Congress to create an incentive for the employer to provide security for the employee in the form of pension and profit-sharing plans, but it qualified the right to take deductions for such contributions by requiring that the taxpayer justify such as ordinary and necessary expenses of the business, and which, when added to other compensation paid to the employee, represents reasonable compensation for services rendered by employee-beneficiaries. The court cannot say, in the absence of proof, that the contributions in excess of the formula provided in the plan, constituted an ordinary and necessary expense of the business. The burden was upon the taxpayer, in order to obtain the

deduction claimed, to establish that the contributions were ordinary and necessary business expenses. . Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379. The presumption of . correctness which attaches to the Commissioner's disallowance of claimed deductions is not overcome by argument of counsel that contributions were made at a time when employees were being pirated by other companies and it was necessary to do something to keep the employee satisfied. The court is confronted with the situation wherein it appears that after the end of the year, profits which showed on the books of the corporation and which would have been taxable as such are diverted retroactively into a trust channel in an amount greatly in excess of that contracted for at the beginning of the tax year. The Government should not be compelled to allow a deduction of this character, as an ordinary and necessary business expense, in the absence of any justification thereof. Tax avoidance is not of itself improper but the diversion of a substantial amount of money in excess of that contracted for smacks of an after-thought to avoid taxation and requires justification by the taxpayer in the face of the disallowance by the Commissioner.

 Mention may be made of the suggestion of plaintiff that if the deduction is not permitted under Section 23(p)(1)(C), it should be allowed under Section 23(p)(1)(D). The limitations of Section 23(a) apply as well to the latter section, and further, under 23(p)(1)(D) only amounts actually paid within the taxable year are deductible since the special provisions of Section 23(p)(1)(E), providing that payment made within sixty days after the close of the taxable year of accrual shall be deemed to have been made on the last day of the year of accrual, have no application to deductions under 23(p)(1)(D).

Taking this view of the case it is unnecessary to decide whether under the terms of Section 23(p)(1)(E) taxpayer's excess contribution must and did actually accrue during the year 1944, or whether it is sufficient that payment be made within 60 days of the termination date of the accrual year.

 We come then to the consideration of plaintiff's alternative cause of action, that is, whether the contribution to the profit-sharing trust for 1944 should be computed on the basis of the net income as finally adjusted, or upon the net income originally reported by plaintiff. Defendant contends that if the computation is made upon any other basis than on the basis of the net income as originally reported, it would create serious administrative complications and could ultimately defeat the purpose of the profit-sharing trust. It argues that the Bureau practice has been to regard each contribution as fixed when made according to the formula in each case, and further, that in the cases where the net income, as reported, is revised upwards following an examination of a return, it does not in a later year require a further contribution nor disqualify the trust because the contribution did not meet the requirements of the profit-sharing formula. This position ignores the fact that here the contribution, though in excess of the formula called for in the plan, has been made, and that the right of the trust to receive the contribution depends not upon the approval of the Bureau but upon the contract between the plaintiff company and the trustees of the trust. The rights to a proportionate share vest as the profits are earned, the extent thereof depending upon an administrative, mathematical computation postponed to the end of the accounting period. An erroneous calculation of net profits can have no effect on the vesting of the right to receive the contribution. Therefore, if net income is revised upwards so as to increase net profits a corresponding adjustment must be made by the taxpayer so that the contribution correctly reflects 15 per cent of the net profits as required under the contract. There seems to be no great administrative difficulty presented in requiring the Commissioner to permit the taxpayer to use the net income figure, as revised, as a basis for determining the amount of the contribution to the profit-sharing plan and to allow a corresponding deduction therefor.

As to the primary cause of action the complaint will be dismissed on its merits. As to the alternative cause defendant will allow a deduction for contribution to the profit-sharing trust in an amount equal to 15 per cent of the net profits as based upon the plaintiff's net income as finally determined by the Commissioner. Figures will be recomputed by the parties and adjustment made in accordance with this opinion.

Findings of Fact, Conclusions of Law and Order for Judgment will be submitted by counsel for the Government with reference to the primary cause of action and by counsel for the plaintiff on the alternative cause of action.